## UNITED STATES v. GREAT NORTHERN RY. CO.

### No. 2246.

District Court, D. Minnesota, Third Division.

Feb. 7, 1931.

Elmer B. Collins, Sp. Asst. to Atty. Gen., and Lewis L. Drill, U. S. Atty., and George A. Heisey, Asst. U. S. Atty., both of St. Paul Minn. (John Lord O'Brian, Asst. to Atty. Gen., on the brief), for the United States.

F. G. Dorety, R. J. Hagman, and J. H. Mulally, all of St. Paul, Minn. (R. E. L. Smith, of Washington, D. C., on the brief), for defendant.

SANBORN, District Judge.

The facts admitted by the demurrer are, in substance, these:

The defendant was a carrier entitled to the guaranty provided for by section 209 of the Transportation Act of 1920 (41 Stat. 464 [49 USCA § 77]). It received as advances during the guaranty period, March 1, 1920, to September 1, 1920, $6,500,000, under section 209(h). On March 1, 1921, or shortly thereafter, it received $6,000,000 additional under section 209, as amended by section 212 (section 212 having been enacted February 26, 1921; 41 Stat. 1145 [49 USCA § 79]). On June 17, 1925, the Interstate Commerce Commission issued a final certificate determining that the defendant was entitled to $11,198,887.31 in satisfaction of the guaranty, and thereafter and on June 8, 1926, issued an amended final certificate, pending a rehearing, fixing the amount at $11,170,214.02. The plaintiff demanded that the defendant refund the difference between what it had received and the amount finally fixed by the Commission. The defendant refused to make the refund, and this suit resulted. It should be noted that the plaintiff does not allege that the payment of $6,000,000 made in 1921, after the enactment of section 212, was the result of fraud, accident, or mistake, but bases its right to recover solely on the proposition that the final determination of the amount necessary to make good the guaranty establishes its right to recover the difference between what was paid to the defendant and the amount finally determined by the Commission to be the amount which the defendant was entitled to.

The question presented is this: Under section 209, as amended by section 212, was a carrier entitled to the guaranty provided for required to refund to the government any portion of payments made to it under the provisions of section 212 in the event that the Commission thereafter determined that such payment, plus advances made under section 209(h), was in excess of the amount guaranteed?

Section 209, as originally enacted, seems readily understandable. It guarantees to a carrier accepting its provisions "that the railway operating income of such carrier for the guaranty period as a whole shall not be less than one-half the amount named in such contract [the contract fixing just compensation under the Federal Control Act] as annual compensation." Section 209(c)(1).

Paragraph (g) provides: "The commission shall, as soon as practicable after the expiration of the guaranty period, ascertain and certify to the Secretary of the Treasury the several amounts necessary to make good the foregoing guaranty to each carrier. * * *"

Paragraph (h) provides: "Upon application of any carrier to the Commission, asking that during the guaranty period there may be advanced to it from time to time such sums, not in excess of the estimated amount necessary to make good the guaranty, as are necessary to enable it to meet its fixed charges and operating expenses, the Commission may certify to the Secretary of the Treasury the amount of, and times at which, such advances, if any, shall be made. The Secretary of the Treasury, on receipt of such certificate, is authorized and directed to make the advances in the amounts and at the times specified in the certificate, upon the execution by the carrier of a contract, secured in such manner as the Secretary may determine, that upon final determination of the amount of the guaranty provided for by this section such carrier will repay to the United States any amounts which it has received from such advances in excess of the guaranty, with interest at the rate of 6 per centum per annum from the time such excess was paid."

Section 209, as originally enacted, provided for the ascertainment by the Commission of the amount due each carrier after the guaranty period had expired, and provided for advances of estimated amounts during the guaranty period upon condition that, if the estimates proved incorrect, the excess should be refunded. As it was construed, it did not permit any advances to be made to the carrier after the guaranty period had expired, nor did it permit partial payments of amounts known to be due, prior to the final ascertainment of the "several amounts necessary to make good the foregoing guaranty."

An examination of the Congressional debates upon the bill which finally became section 212 clearly shows the situation with which Congress was confronted at the time of the enactment of that section, the reasons for enacting it, and the effect that it was intended to have. See Congressional Record, volume 60, pages 2736 to 2740, and pages 2799 to 2819.

The amounts known to be due the carriers, under section 209, at the time section 212 was being considered, were vastly in excess of the advances which the carriers had received under section 209(h). The carriers were in need of the money which had been promised them. The Interstate Commerce Commission could not issue certificates in advance of final determination, nor could the carriers receive any money in advance of the final determination of the entire amount necessary to make good the guaranty, and the carriers were precluded by the terms of section 209 (h) from applying for further advances. Thus, although the government owed the carriers more than $300,000,000, and knew that it owed them that amount, it could not pay what it owed until such time as the Commission was able to make a final determination of the exact amount due each carrier, which involved, not only a consideration of ascertained debits and credits, but a consideration of deferred debits and credits.

It appears clearly that section 212 was an amendment of paragraph (g) of section 209, and had no reference whatever to paragraph (h) of that section. Section 212 reads in part as follows:

"(a) In making certifications under * * * section 209, the Commission, if not at the time able finally to determine the whole amount due under such section to a carrier * * * may make its certificate for any amount definitely ascertained by it to be due, and may thereafter in the same manner make further certificates, until the whole amount due has been certified. * * *

"(b) In ascertaining the several amounts payable under * * *" section 209, "the Commission is authorized, in the case of deferred debits and credits which can not at the time be definitely determined, to make, whenever in its judgment practicable, a rea-

sonable estimate of the net effect of any such items, and, when agreed to by the carrier or express company, to use such estimate as a definitely ascertained amount in certifying amounts payable under * * *" section 209, "and such estimates so agreed to shall be prima facie but not conclusive evidence of their correctness in amount in final settlement."

The proponents of the bill which became section 212 clearly and definitely explained that it was the intention that the Interstate Commerce Commission should have the power to issue certificates to the carriers for amounts definitely ascertained to be due them, and that payments made under such certificates should be final. As the bill was originally drawn, under paragraph (b) the reasonable estimate of the net effect of deferred debits and credits was also to be binding, but the bill was finally amended so that such estimates should only be prima facie evidence of their correctness. This was done upon the theory that an estimate was in the nature of a guess, and that the United States should not be bound by a mere estimate. An amendment was offered to section 212(a), which would have required a carrier, upon the final determination by the Commission of the amount necessary to make good the guaranty, to refund any amounts received by it under that paragraph in excess of the amount finally determined to be due. That amendment was voted down upon the proposition that the Interstate Commerce Commission could be trusted to protect the interests of the government and not to pay to the carriers any amount in excess of that which was actually owing. The construction given to the section prior to its enactment by Congress is well expressed in the letter written by the Chairman of the Interstate Commerce Commission to Congressman Esch on the 22d day of January, 1921, which reads as follows:

"Washington, January 22, 1921.
"Hon. John J. Esch, Chairman Committee on Interstate and Foreign Commerce, House of Representatives.

"Dear Sir: This morning Representative Sims, member of your committee, called and discussed with me some features of H. R. 15713, more particularly paragraph (b) of section 212.

"Mr. Sims thought that there was difference of understanding as to the intent of the language in this paragraph, and he asked that I write you my conception of the manner in which, if enacted in its present form, it would be interpreted and applied by the Commission.

"Paragraph (a) of Section 212 very definitely authorizes certificates in partial payment and payment of such certificates. It will be noted that such certificates are by the terms of this paragraph to be 'for any amount definitely ascertained by it (the Commission) to be due.' I think there is no misunderstanding in that language. There is no room for misunderstanding of our conception of our duties under it, which is that a partial payment certificate would not be made for any amount in excess of any amount 'definitely ascertained' by us to be due the carrier.

"Paragraph (b) provides that as to deferred debits and credits which cannot at the time be definitely determined the Commission may when it is deemed practicable make a reasonable estimate of the net effect of such deferred debits and credits and when agreed to by the carrier or express company to use such estimate as a definitely ascertained amount in certifying sums payable and provides that such estimate so agreed to shall be binding in final settlement.

"Judge Sims thinks that this language is susceptible of interpretation which would authorize the Commission to make estimates of deferred debit and credit items in connection with partial payments, leaving other deferred debit and credit items for consideration in connection with other or further certificates, or final settlement. I think that the language is susceptible of that interpretation, but I do not understand that the Commission has any thought of so using it, and I do not conceive that the Commission would so use it. The authority is permissive. The paragraph contemplates making a reasonable estimate of the net effect of such deferred debit and credit items and using them under agreement with the carriers as a basis for a final settlement. Under that permissive authority the Commission would be under the moral obligation to preserve to all reasonable extent the interests and welfare of the Government, and it would be its purpose so to do. The amount of money involved in the deferred debit and credit items is not a large item as compared with the amount of the guaranty. The purpose of this paragraph, as I understand it, is to make possible speedy and final settlements under terms fair to the carrier and fair to the Government, and to make final settlement under such an agreement rather than to have some of these claims drag along for many months or years waiting the final determination of the debit and credit items,

which final determination might in small measure affect the balance.

"Yours very truly,

"Edgar E. Clark, Chairman
"Interstate Commerce Commission."

The whole scheme of section 212 was to get into the hands of the carriers the money to which they were entitled under section 209 as rapidly as amounts due became capable of definite ascertainment by the Commission, instead of requiring that it be withheld until such time as the Commission was able to finally determine the total amount of the guaranty. It was contemplated and expected that the Commission should not certify any amount which was not actually due. The certificates for partial payments under section 212 were intended to have the same force and effect with respect to amounts determined to be due as the certificates for final payment provided for in section 209(g).

Since in this case the $6,000,000 was paid to the defendant after the enactment of section 212, upon the certificate of the Commission that that amount was due to the defendant in addition to the advances which it already had received, I cannot find any basis for holding that the final certificate, showing a less amount than the defendant actually received, gives to the government a cause of action for the recovery of the difference in the amounts certified.

I realize that my views as to the proper construction of section 209 as amended by section 212 do not coincide with those of the Court of Appeals of the District of Columbia as expressed in Northern Pacific Railway Co. v. Interstate Commerce Commission, 57 App. D. C. 318, 23 F.(2d) 221. However, the situation presented in that case was different than in this. There the Northern Pacific Railway Company had asked for the partial payment on account under section 212, representing that the government would be protected in making payments by virtue of securities deposited by that carrier for the repayment of advances.

It is the contention of the government that section 212, because it did not repeal section 209 (g) or section 209(h), must be taken as showing an intention on the part of Congress that the certificates issued for amounts definitely ascertained to be due are not of the same force as the final certificate provided for in section 209(g). I cannot believe that such a construction is justified in view of the clearly expressed intent of Congress as shown by the Congressional Record,

and, for that matter, by the language employed in the act, that the amounts paid under section 212 should be those "definitely ascertained by it (the Commission) to be due," and therefore not recoverable, even though in excess of the amount finally ascertained. Section 212 did not repeal section 209(g), but, after the enactment of section 212, the only purpose of the final determination provided for by section 209(g) was to ascertain how much more the carrier was entitled to than had been certified and paid under section 212.

I have not set forth those portions of the debates which have constrained me to reach the conclusions which I have expressed. Many of them are set out in the brief of the defendant, and many others will be found in the pages of the Congressional Record referred to herein.

If this action were based upon fraud, accident, or mistake in the issuance of the certificate for $6,000,000, or if it were the claim of the government that an error had been made in calculating deferred debits and credits under paragraph (b) of section 212, I should overrule the demurrer. If, however, I am correct in my construction of the purpose and effect of section 212 and the force which it was intended that the certificates issued under paragraph (a) of that section should have, the defendant is entitled to have its demurrer sustained. It is ordered that it be and is sustained.

The plaintiff may have twenty days in which to file an amended complaint, if it be so advised.